# EXHIBIT A

3:21-cv-00508-MGL    Date Filed 02/18/21    Entry Number 1-1    Page 2 of 8

# South Carolina General Assembly
124th Session, 2021-2022

Download This Version in Microsoft Word format

**Bill 1**

~~Indicates Matter Stricken~~
<u>Indicates New Matter</u>

---

(Text matches printed bills. Document has been reformatted to meet World Wide Web specifications.)

~~Indicates Matter Stricken~~

<u>Indicates New Matter</u>

COMMITTEE REPORT

February 10, 2021

**S. 1**

Introduced by Senators Grooms, Verdin, Kimbrell, Garrett, Martin, Shealy, Climer, Corbin, Cromer, Rice, Adams, Hembree, Gambrell, Loftis and Campsen

S. Printed 2/10/21--H.

Read the first time February 2, 2021.

### THE COMMITTEE ON JUDICIARY

To whom was referred a Bill (S. 1) to enact the "South Carolina Fetal Heartbeat and Protection from Abortion Act"; to amend Chapter 41, Title 44 of the 1976 code, etc., respectfully

### REPORT:

That they have duly and carefully considered the same and recommend that the same do pass:

CHRIS MURPHY for Committee.

### A BILL

TO ENACT THE "SOUTH CAROLINA FETAL HEARTBEAT AND PROTECTION FROM ABORTION ACT"; TO AMEND CHAPTER 41, TITLE 44 OF THE 1976 CODE, RELATING TO ABORTIONS, BY ADDING ARTICLE 6, TO REQUIRE TESTING FOR A DETECTABLE FETAL HEARTBEAT BEFORE AN ABORTION IS PERFORMED ON A PREGNANT WOMAN, TO PROHIBIT THE PERFORMANCE OF AN ABORTION IF A FETAL HEARTBEAT IS DETECTED, TO PROVIDE MEDICAL EMERGENCY EXCEPTIONS, TO REQUIRE CERTAIN DOCUMENTATION AND RECORDKEEPING BY PHYSICIANS PERFORMING ABORTIONS, TO CREATE A CIVIL ACTION FOR A PREGNANT WOMAN UPON WHOM AN ABORTION IS PERFORMED, TO CREATE CRIMINAL PENALTIES, AND FOR OTHER

PURPOSES; TO AMEND SECTION 44-41-460(A) OF THE 1976 CODE, RELATING TO THE REQUIRED REPORTING OF ABORTION DATA TO THE DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL, TO ADD REPORTING OF FETAL HEARTBEAT TESTING AND PATIENT MEDICAL CONDITION DATA; AND TO AMEND SECTION 44-41-330(A)(1) OF THE 1976 CODE, RELATING TO A PREGNANT WOMAN'S RIGHT TO KNOW CERTAIN INFORMATION, TO REQUIRE NOTIFICATION OF THE DETECTION OF A FETAL HEARTBEAT.

Be it enacted by the General Assembly of the State of South Carolina:

SECTION    1.    This act shall be known and may be cited as the "South Carolina Fetal Heartbeat and Protection from Abortion Act".

SECTION    2.    The General Assembly hereby finds, according to contemporary medical research, all of the following:

(1)    as many as thirty percent of natural pregnancies end in spontaneous miscarriage;

(2)    fewer than five percent of all natural pregnancies end in spontaneous miscarriage after the detection of a fetal heartbeat;

(3)    over ninety percent of in vitro pregnancies survive the first trimester if a fetal heartbeat is detected;

(4)    nearly ninety percent of in vitro pregnancies do not survive the first trimester if a fetal heartbeat is not detected;

(5)    a fetal heartbeat is a key medical predictor that an unborn human individual will reach live birth;

(6)    a fetal heartbeat begins at a biologically identifiable moment in time, normally when the fetal heart is formed in the gestational sac;

(7)    the State of South Carolina has legitimate interests from the outset of a pregnancy in protecting the health of the pregnant woman and the life of the unborn child who may be born; and

(8)    in order to make an informed choice about whether to continue a pregnancy, a pregnant woman has a legitimate interest in knowing the likelihood of the human fetus surviving to full-term birth based upon the presence of a fetal heartbeat.

SECTION    3.    Chapter 41, Title 44 of the 1976 Code is amended by adding:

"ARTICLE 6

Fetal Heartbeat and Protection from Abortion

Section 44-41-610.    As used in this article:

(1)    'Conception' means fertilization.

(2)    'Contraceptive' means a drug, device, or chemical that prevents conception.

(3)    'Fetal heartbeat' means cardiac activity, or the steady and repetitive rhythmic contraction of the fetal heart, within the gestational sac.

(4)    'Gestational age' means the age of an unborn human individual as calculated from the first day of the last menstrual period of a pregnant woman.

(5)    'Gestational sac' means the structure that comprises the extraembryonic membranes that envelop the human fetus and that is typically visible by ultrasound after the fourth week of pregnancy.

(6)    'Human fetus' or 'unborn child' each means an individual organism of the species homo sapiens from fertilization until live birth.

(7)    'Intrauterine pregnancy' means a pregnancy in which a human fetus is attached to the placenta within the uterus of a pregnant woman.

(8)    'Medical emergency' means a condition that, by any reasonable medical judgment, so complicates the medical condition of a pregnant woman that it necessitates the immediate abortion of her pregnancy to avert her death without first determining whether there is a detectable fetal heartbeat or for which the delay necessary to determine whether there is a detectable fetal heartbeat will create serious risk of a substantial and irreversible physical impairment of a major bodily function, not including psychological or emotional conditions. A condition must not be considered a medical emergency if based on a claim or diagnosis that a woman will engage in conduct that she intends to result in her death or in a substantial and irreversible physical impairment of a major bodily function.

(9)    'Physician' means any person licensed to practice medicine and surgery, or osteopathic medicine and surgery, in this State.

(10)    'Reasonable medical judgment' means a medical judgment that would be made by a reasonably prudent physician who is knowledgeable about the case and the treatment possibilities with respect to the medical conditions involved.

(11)    'Spontaneous miscarriage' means the natural or accidental termination of a pregnancy and the expulsion of the human fetus, typically caused by genetic defects in the human fetus or physical abnormalities in the pregnant woman.

Section 44-41-620.    (A)    A court judgment or order suspending enforcement of any provision of this chapter is not to be regarded as tantamount to repeal of that provision.

(B)    If the United States Supreme Court issues a decision overruling Roe v. Wade, 410 U.S. 113 (1973), any other court issues an order or judgment restoring, expanding, or clarifying the authority of states to prohibit or regulate abortion entirely or in part, or an amendment is ratified to the Constitution of the United States restoring, expanding, or clarifying the authority of states to prohibit or regulate abortion entirely or in part, then the Attorney General may apply to the pertinent state or federal court for either or both of the following:

(1)    a declaration that any one or more of the statutory provisions specified in subsection (A) are constitutional; or

(2)    a judgment or order lifting an injunction against the enforcement of any one or more of the statutory provisions specified in subsection (A).

(C)    If the Attorney General fails to apply for relief pursuant to subsection (B) within a thirty-day period after an event described in that subsection occurs, then any solicitor may apply to the appropriate state or federal court for such relief.

Section 44-41-630.    An abortion provider who is to perform or induce an abortion, a certified technician, or another agent of the abortion provider who is competent in ultrasonography shall:

(1)    perform an obstetric ultrasound on the pregnant woman, using whichever method the physician and pregnant woman agree is best under the circumstances;

(2)    during the performance of the ultrasound, display the ultrasound images so that the pregnant woman may view the images; and

(3) record a written medical description of the ultrasound images of the unborn child's fetal heartbeat, if present and viewable.

Section 44-41-640.   If a pregnancy is at least eight weeks after fertilization, then the abortion provider who is to perform or induce an abortion, or an agent of the abortion provider, shall tell the woman that it may be possible to make the embryonic or fetal heartbeat of the unborn child audible for the pregnant woman to hear and shall ask the woman if she would like to hear the heartbeat. If the woman would like to hear the heartbeat, then the abortion provider shall, using whichever method the physician and patient agree is best under the circumstances, make the fetal heartbeat of the unborn child audible for the pregnant woman to hear.

Section 44-41-650.   (A)   Except as provided in Section 44-41-660, no person shall perform, induce, or attempt to perform or induce an abortion on a pregnant woman before a physician determines in accordance with Section 44-41-630 whether the human fetus the pregnant woman is carrying has a detectable fetal heartbeat.

(B)   A person who violates subsection (A) is guilty of a felony and, upon conviction, must be fined ten thousand dollars, imprisoned not more than two years, or both.

Section 44-41-660.   (A)   Section 44-41-650 does not apply to a physician who performs or induces an abortion if the physician determines according to standard medical practice that a medical emergency exists that prevents compliance with the section.

(B)   A physician who performs or induces an abortion on a pregnant woman based on the exception in subsection (A) shall make written notations in the pregnant woman's medical records of the following:

(1)   the physician's belief that a medical emergency necessitating the abortion existed;

(2)   the medical condition of the pregnant woman that assertedly prevented compliance with Section 44-41-650; and

(3)   the medical rationale to support the physician's conclusion that the pregnant woman's medical condition necessitated the immediate abortion of her pregnancy to avert her death.

(C)   For at least seven years from the date the notations are made, the physician shall maintain in his own records a copy of the notations.

Section 44-41-670.   A physician is not in violation of Section 44-41-650 if the physician acts in accordance with Section 44-41-630 and the method used to test for the presence of a fetal heartbeat does not reveal a fetal heartbeat.

Section 44-41-680.   (A)   Except as provided in subsection (B), no person shall perform, induce, or attempt to perform or induce an abortion on a pregnant woman with the specific intent of causing or abetting the termination of the life of the human fetus the pregnant woman is carrying and whose fetal heartbeat has been detected in accordance with Section 44-41-630.

(B)   A physician may perform, induce, or attempt to perform or induce an abortion on a pregnant woman after a fetal heartbeat has been detected in accordance with Section 44-41-630 only if:

(1)   the pregnancy is the result of rape, and the probable post-fertilization age of the fetus is fewer than twenty weeks;

(2)   the pregnancy is the result of incest, and the probable post-fertilization age of the fetus is fewer than twenty weeks;

(3)   the physician is acting in accordance with Section 44-41-690; or

(4)   there exists a fetal anomaly, as defined in Section 44-41-430.

(C) A physician who performs or induces an abortion on a pregnant woman based on the exception in either subsection (B)(1) or (2) must report the allegation of rape or incest to the sheriff in the county in which the abortion was performed. The report must be made no later than twenty-four hours after performing or inducing the abortion, may be made orally or otherwise, and shall include the name and contact information of the pregnant woman making the allegation. Prior to performing or inducing an abortion, a physician who performs or induces an abortion based upon an allegation of rape or incest must notify the pregnant woman that the physician will report the allegation of rape or incest to the sheriff. The physician shall make written notations in the pregnant woman's medical records that the abortion was performed pursuant to the applicable exception, that the doctor timely notified the sheriff of the allegation of rape or incest, and that the woman was notified prior to the abortion that the physician would notify the sheriff of the allegation of rape or incest.

(D) A person who violates subsection (A) is guilty of a felony and, upon conviction, must be fined ten thousand dollars, imprisoned not more than two years, or both.

Section 44-41-690.   (A)   Section 44-41-680 does not apply to a physician who performs a medical procedure that, by any reasonable medical judgment, is designed or intended to prevent the death of the pregnant woman or to prevent the serious risk of a substantial and irreversible impairment of a major bodily function of the pregnant woman.

(B) A physician who performs a medical procedure as described in subsection (A) shall declare, in a written document, that the medical procedure was necessary, by reasonable medical judgment, to prevent the death of the pregnant woman or to prevent the serious risk of a substantial and irreversible physical impairment of a major bodily function of the pregnant woman. In the document, the physician shall specify the pregnant woman's medical condition that the medical procedure was asserted to address and the medical rationale for the physician's conclusion that the medical procedure was necessary to prevent the death of the pregnant woman or to prevent the serious risk of a substantial and irreversible impairment of a major bodily function of the pregnant woman.

(C) A physician who performs a medical procedure as described in subsection (A) shall place the written document required by subsection (B) in the pregnant woman's medical records. For at least seven years from the date the document is created, the physician shall maintain a copy of the document in his own records.

Section 44-41-700.   A physician is not in violation of Section 44-41-680 if the physician acts in accordance with Section 44-41-630 and the method used to test for the presence of a fetal heartbeat does not reveal a fetal heartbeat.

Section 44-41-710.   This article must not be construed to repeal, by implication or otherwise, Section 44-41-20 or any otherwise applicable provision of South Carolina law regulating or restricting abortion. An abortion that complies with this article but violates the provisions of Section 44-41-20 or any otherwise applicable provision of South Carolina law must be considered unlawful as provided in such provision. An abortion that complies with the provisions of Section 44-41-20 or any otherwise applicable provision of South Carolina law regulating or restricting abortion but violates this article must be considered unlawful as provided in this article. If some or all of the provisions of this article are ever temporarily or permanently restrained or enjoined by judicial order, all other provisions of South Carolina law regulating or restricting abortion must be enforced as though such restrained or enjoined provisions had not been adopted, provided, however, that whenever such temporary or permanent restraining order or injunction is stayed or dissolved, or otherwise ceases to have effect, such provisions shall have full force and effect.

Section 44-41-720.   Nothing in this article prohibits the sale, use, prescription, or administration of a drug, device, or chemical that is designed for contraceptive purposes.

Section 44-41-730.   A pregnant woman on whom an abortion is performed or induced in violation of this article may not be criminally prosecuted for violating any of the provisions of this article or for attempting to commit, conspiring to commit, or acting complicitly in committing a violation of any of the provisions of the

article and is not subject to a civil or criminal penalty based on the abortion being performed or induced in violation of any of the provisions of this article.

Section 44-41-740.    (A)    A woman who meets any one or more of the following criteria may file a civil action in a court of competent jurisdiction:

(1)    a woman on whom an abortion was performed or induced in violation of this article; or

(2)    a woman on whom an abortion was performed or induced who was not given the information provided in Section 44-41-330.

(B)    A woman who prevails in an action filed pursuant to subsection (A) shall receive the following from the person who committed the act or acts described in subsection (A):

(1)    damages in an amount equal to ten thousand dollars or an amount determined by the trier of fact after consideration of the evidence; and

(2)    court costs and reasonable attorney's fees.

(C)    If the defendant in an action filed pursuant to subsection (A) prevails and the court finds that the commencement of the action constitutes frivolous conduct and that the defendant was adversely affected by the frivolous conduct, then the court shall award reasonable attorney's fees to the defendant, provided, however, that a conclusion of frivolousness cannot rest upon the unconstitutionality of the provision that was allegedly violated."

SECTION    4.    Section 44-41-460(A) of the 1976 Code is amended by adding appropriately numbered new items at the end to read:

"(    )    The information related to fetal heartbeat testing required pursuant to Sections 44-41-630, 44-41-660, and 44-41-690, as applicable.

(    )    Whether the reason for the abortion was to preserve the health of the pregnant woman and, if so, the medical condition that the abortion was asserted to address and the medical rationale for the conclusion that an abortion was necessary to address that condition. If the reason for the abortion was other than to preserve the health of the pregnant woman, then the report must specify that maternal health was not the purpose of the abortion. This information must also be placed in the pregnant woman's medical records and maintained for at least seven years thereafter."

SECTION    5.    Section 44-41-330(A)(1) of the 1976 Code is amended to read:

"(1)(a)    The woman must be informed by the physician who is to perform the abortion or by an allied health professional working in conjunction with the physician of the procedure to be involved and by the physician who is to perform the abortion of the probable gestational age of the embryo or fetus at the time the abortion is to be performed. If an ultrasound is performed, an abortion may not be performed sooner than sixty minutes following completion of the ultrasound. The physician who is to perform the abortion or an allied health professional working in conjunction with the physician must inform the woman before the ultrasound procedure of her right to view the ultrasound image at her request during or after the ultrasound procedure.

(b)    If the physician who intends to perform or induce an abortion on a pregnant woman has determined pursuant to Section 44-41-630 that the human fetus the pregnant woman is carrying has a detectable fetal heartbeat, then that physician shall inform the pregnant woman in writing that the human fetus the pregnant woman is carrying has a fetal heartbeat. The physician shall further inform the pregnant woman, to the best of the physician's knowledge, of the statistical probability, absent an induced abortion, of bringing the human fetus possessing a detectable fetal heartbeat to term based on the gestational age of the human fetus or, if the director of the department has specified statistical probability information, shall provide to the pregnant woman that

information. The department may promulgate regulations that specify information regarding the statistical probability of bringing an unborn child possessing a detectable fetal heartbeat to term based on the gestational age of the unborn child. Any regulations must be based on available medical evidence."

SECTION    6.    Section 44-41-60 of the 1976 Code is amended to read:

"Section 44-41-60.    Any abortion performed in this State must be reported by the performing physician on the standard form for reporting abortions to the State Registrar, Department of Health and Environmental Control, within seven days after the abortion is performed. The names of the patient and physician may not be reported on the form or otherwise disclosed to the State Registrar. The form must indicate from whom consent was obtained, ~~or~~ circumstances waiving consent, and, if an exception was exercised pursuant to Section 44-41-660, which exception the physician relied upon in performing or inducing the abortion."

SECTION    7.    If any section, subsection, paragraph, subparagraph, sentence, clause, phrase, or word of this act is for any reason held to be unconstitutional or invalid, then such holding shall not affect the constitutionality or validity of the remaining portions of this act, the General Assembly hereby declaring that it would have passed this act and each and every section, subsection, paragraph, subparagraph, sentence, clause, phrase, and word thereof, irrespective of the fact that any one or more other sections, subsections, paragraphs, subparagraphs, sentences, clauses, phrases, or words hereof may be declared to be unconstitutional, invalid, or otherwise ineffective.

SECTION    8.    The repeal or amendment by this act of any law, whether temporary, permanent, civil, or criminal, does not affect pending actions, rights, duties, or liabilities founded thereon or alter, discharge, release, or extinguish any penalty, forfeiture, or liability incurred under the repealed or amended law, unless the repealed or amended provision shall so expressly provide. After the effective date of this act, all laws repealed or amended by this act must be taken and treated as remaining in full force and effect for the purpose of sustaining any pending or vested right, civil action, special proceeding, criminal prosecution, or appeal existing as of the effective date of this act and for the enforcement of rights, duties, penalties, forfeitures, and liabilities as they stood under the repealed or amended laws.

SECTION    9.    This act takes effect upon approval by the Governor.

----XX----

This web page was last updated on February 10, 2021 at 1:06 PM