**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
(Columbia Division)**

| | |
|---|---|
| PLANNED PARENTHOOD SOUTH ATLANTIC, *et al.*, | |
| *Plaintiffs*, | Case No. 3:21-cv-00508-MGL |
| v. | |
| ALAN WILSON, in his official capacity as Attorney General of South Carolina, *et al.*, | |
| *Defendants*. | |

**PLAINTIFFS' CONSOLIDATED RESPONSE IN OPPOSITION TO GOVERNOR
MCMASTER'S AND SPEAKER LUCAS'S MOTIONS TO INTERVENE**

M. Malissa Burnette (Fed. Bar No. 1616)
Kathleen McDaniel (Fed. Bar No. 10139)
Grant Burnette LeFever (Fed. Bar No. 12943)
Burnette Shutt & McDaniel, PA
P.O. Box 1929
Columbia, SC 29202
(803) 904-7913
mburnette@burnetteshutt.law
kmcdaniel@burnetteshutt.law
glefever@burnetteshutt.law

*Attorneys for Plaintiffs*

Julie A. Murray*
Hannah Swanson*
Planned Parenthood Federation of America
1110 Vermont Avenue, NW, Suite 300
Washington, DC 20005
(202) 803-4045
julie.murray@ppfa.org
hannah.swanson@ppfa.org

*Attorneys for Plaintiff Planned Parenthood
South Atlantic*

Alexandra S. Thompson*
Michelle Moriarty*
Jennifer Beard*
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10038
(917) 637-3695
athompson@reprorights.org
mmoriarty@reprorights.org
jbeard@reprorights.org

*Attorneys for Plaintiffs Greenville Women's
Center and Dr. Terry L. Buffkin*

Dated: March 5, 2021

*\* Admitted pro hac vice / to be filed*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND .................................................................................................................... 2

LEGAL STANDARD.............................................................................................................. 3

ARGUMENT ......................................................................................................................... 3

I.     Governor McMaster And Speaker Lucas Are Not Entitled To Intervene As A Matter Of Right Under Rule 24(a)(2)........................................................................................ 3

     A.     Governor McMaster And Speaker Lucas Lack A Direct, Significantly Protectable Interest In SB 1 ........................................................................ 4

     B.     Attorney General Wilson Adequately Represents Any Interest That Governor McMaster And Speaker Lucas May Have In This Litigation .................................... 7

          1.     Attorney General Wilson has the same ultimate objective as the putative intervenors............................................................................. 8

          2.     Governor McMaster and Speaker Lucas make no showing of inadequate representation......................................................................... 9

     C.     Denial Of The Motions To Intervene Would Not Impair Or Impede Either Movant's Ability To Protect His Interests ............................................................ 12

II.     Permissive Intervention Under Rule 24(b) Is Unwarranted ................................... 14

CONCLUSION.................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Alt v. U.S. Env't Prot. Agency,*
    758 F.3d 588 (4th Cir. 2014) ........................................................................... 18

*Bay Mills Indian Cmty. v. Snyder,*
    No. 1:11–cv–729, 2017 WL 7736934 (W.D. Mich. Mar. 8, 2017) ......................... 15

*Bradacs v. Haley,*
    58 F. Supp. 3d 499 (D.S.C. 2014) .................................................................. 6, 17

*Commonwealth of Virginia v. Westinghouse Elec. Corp,*
    542 F.2d 214 (4th Cir. 1976) ................................................................... 7, 10, 12

*Condon v. Haley,*
    21 F. Supp. 3d 572 (D.S.C. 2014) .................................................................. 6, 17

*Diamond v. Charles,*
    476 U.S. 54 (1986) ....................................................................................... 6, 13

*Donaldson v. United States,*
    400 U.S. 517 (1971) .......................................................................................... 4

*Feller v. Brock,*
    802 F.2d 722 (4th Cir. 1986) ............................................................................ 13

*Fisher-Borne v. Smith,*
    14 F. Supp. 3d 699 (M.D.N.C. 2014) ................................................................ 6

*Francis v. Chamber of Com.,*
    481 F.2d 192 (4th Cir. 1973) ............................................................................ 12

*Hous. Gen. Ins. Co. v. Moore,*
    193 F.3d 838 (4th Cir. 1999) .............................................................................. 3

*Kneeland v. Nat'l Coll. Athletic Ass'n,*
    806 F.2d 1285 (5th Cir. 1987) .......................................................................... 15

*Maxum Indem. Co. v. Biddle L. Firm, PA,*
    329 F.R.D. 550 (D.S.C. 2019) .......................................................................... 14

*McHenry v. Comm'r of Internal Revenue,*
    677 F.3d 214 (4th Cir. 2012) ............................................................................ 13

*Menominee Indian Tribe of Wis. v. Thompson,*
    164 F.R.D. 672 (W.D. Wis. 1996) .................................................................... 15

ii

*Middleton v. Andino*,
   481 F. Supp. 3d 563 (D.S.C. 2020) .................................................................... *passim*

*N.C. State Conf. of the NAACP v. Berger*,
   825 Fed. Appx 122 (4th Cir. 2020) ........................................................................... 9

*N.C. State Conf. of the NAACP v. Cooper*,
   332 F.R.D. 161 (M.D.N.C. 2019) ..................................................................... 12, 13

*Ohio Valley Env't Coal., Inc. v. McCarthy*,
   313 F.R.D. 10 (S.D. W. Va. 2015) ......................................................................... 13

*One Wis. Inst., Inc. v. Nichol*,
   310 F.R.D. 394 (W.D. Wis. 2015) ...................................................... 5, 12, 15, 16

*S.C. Coastal Conservation League v. Pruitt*,
   No. 18-CV-330-DCN, 2018 WL 2184395 (D.S.C. May 11, 2018) ........................... 4

*S.C. Elec. & Gas Co. v. Whitfield*,
   No. 3:18-CV-01795-JMC, 2018 WL 3470660 (D.S.C. July 18, 2018) .................... 5, 6, 11, 15

*Shaw v. Hunt*,
   154 F.3d 161 (4th Cir. 1998) ................................................................................ 13

*Stuart v. Huff*,
   706 F.3d 345 (4th Cir. 2013) ......................................................................... *passim*

*Sweeney v. Rauner*,
   No. 18-cv-1362, 2018 WL 11275902 (N.D. Ill. Nov. 8, 2018) .............................. 15

*Teague v. Bakker*,
   931 F.2d 259 (4th Cir. 1991) ............................................................................. 4, 7

*Thomas v. Andino*,
   335 F.R.D. 364 (D.S.C. 2020) ..................................................................... 4, 12, 17

*Thomas v. Andino*,
   No. 3:20-cv-01552-JMC, 2020 WL 4934305 (D.S.C. Aug. 24, 2020) ......... 5, 11, 17

*Town of Chester v. Laroe Ests., Inc.*,
   137 S. Ct. 1645 (2017) ......................................................................................... 13

*TPI Corp. v. Merch. Mart of S.C., Inc.*
   61 F.R.D. 684 (D.S.C. 1974) ................................................................................ 14

*Tri-State Generation and Transmission Ass'n, Inc. v. N.M. Pub. Regul. Comm'n*,
   787 F.3d 1068, (10th Cir. 2015) .......................................................................... 15

*Va. House of Delegates v. Bethune-Hill*,
  139 S. Ct. 1945 (2019) .......................................................................................... 14

**Legislation and Statutes**

Gen. Appropriations Bill for Fiscal Year 2019–2020, H. 4000,
  123rd Sess. § 91.26 (2019) ........................................................................... 13, 14, 15

2020 S.C. Acts 135 § 1(A)(2) ................................................................................. 10

N.C. Gen. Stat. § 1-72.2 ........................................................................................ 14

S.C. Code Ann. § 1-7-40 ........................................................................................ 11

Senate Bill 1, South Carolina Fetal Heartbeat and Protection from Abortion Act,
  124th Sess. (S.C. 2021) ................................................................................... *passim*

**Other Authorities**

Alan Wilson, South Carolina Attorney General, *Attorney General Wilson's Statement on
  Heartbeat Bill Becoming Law*,
  http://www.scag.gov/archives/42039 (last viewed Mar. 4, 2021) ................................ 3

Jeffrey Collins, *SC Governor Signs Abortion Ban; Planned Parenthood Sues*,
  Associated Press (Feb. 18, 2021), https://apnews.com/article/sc-governor-signs-abortion-ban-
  2cd .................................................................................................................... 9

Mike Olson, *Attorney General Alan Wilson Reacts to the Suspension of SC's Recent Abortion
  Ban*, ABC Columbia (Feb. 19 2021), https://www.abccolumbia.com/2021/02/19/ .............. 3

Mot. to Intervene by James H. "Jay" Lucas, Speaker of the S.C. House of Representatives,
  *Middleton v. Andino*,
  No. 3:20-cv-1730-JMC, 2020 WL 6577939 (D.S.C. Aug. 12, 2020) ................................ 21, 22

Mot. to Intervene by James H. "Jay" Lucas, Speaker of the S.C. House of Representatives,
  *Thomas v. Andino*,
  No. 3:20-cv-1552-JMC, 2020 WL 6253386 (D.S.C. Aug. 12, 2020) ...................................... 21

**Rules**

D.S.C. Civ. R. 7.05(B) ........................................................................................... 26

Fed. R. Civ. P. 24(a) ....................................................................................... *passim*

Fed. R. Civ. P. 24(b) ....................................................................................... *passim*

## INTRODUCTION

Not content with enacting one of the most extreme abortion bans in the nation, Governor Henry McMaster and James H. "Jay" Lucas, Speaker of the South Carolina House of Representatives, now seek to intervene in this lawsuit to continue their public campaigns in support of South Carolina Senate Bill 1, the "Fetal Heartbeat and Protection from Abortion Act" (hereinafter "SB 1" or "the Act").

The Court should deny both motions to intervene. As to both Governor McMaster and Speaker Lucas, intervention is neither warranted as of right under Federal Rule of Civil Procedure 24(a)(2) nor warranted permissively under Federal Rule of Civil Procedure 24(b)(1). The putative intervenors are not entitled to intervention as of right because their involvement in SB 1's passage does not create a direct, significantly protectable interest in the Act. Any interests they do have are adequately represented by existing Defendant Attorney General Alan Wilson, a South Carolina state official who enjoys a strong presumption of adequate representation under Fourth Circuit precedent.

Permissive intervention would prejudice Plaintiffs by complicating and potentially prolonging a straightforward case that could otherwise be resolved promptly as a matter of law. And allowing the Governor's and Speaker's permissive intervention here would invite elected officials to intervene in *any* lawsuit challenging the constitutionality of a state statute, without any showing of inadequate representation or any particularized allegations connecting the specific law at issue to the intervenor's interests. Governor McMaster and Speaker Lucas remain free to share their views on SB 1 with the court as *amici curiae* as this Court deems appropriate; their participation here as parties appears to serve no end but their own political self-interest.

1

## BACKGROUND

On February 18, 2021, the South Carolina General Assembly passed SB 1, which bans abortion upon detection of embryonic or fetal cardiac activity—that is, at roughly six weeks LMP,[1] before many people realize they are pregnant. The law also imposes a host of associated mandatory disclosure, reporting, and recordkeeping requirements. Plaintiffs filed this lawsuit that same day, given Governor McMaster's public statement that he would sign SB 1 immediately and in light of the law's immediate effectiveness upon that signature. Plaintiffs sought a declaration that SB 1 violates the Fourteenth Amendment, as well as preliminary and permanent injunctive relief from enforcement of SB 1 once effective. Governor McMaster signed SB 1 just three hours after its passage by the General Assembly, and on February 19, 2021, after reviewing briefing and hearing argument from the parties, the Court entered a temporary restraining order ("TRO") blocking enforcement of the Act. On March 5, 2021, the Court extended this TRO to March 19, 2021.

Upon learning of this lawsuit, South Carolina Attorney General Alan Wilson released an official statement vowing that his office would "vigorously defend this law in court because there is nothing more important than protecting life."[2] Upon the Court's entry of a TRO on February 19, the Attorney General released another statement asserting that the Act "is constitutional and deserves a vigorous defense to the U.S. Supreme Court if necessary. . . . Today's temporary restraining order is only a first step, but the legal fight has just begun. We look forward to further arguing why this law should be valid."[3]

---

[1] It is standard medical practice to date pregnancy by the number of weeks and days since the first day of the patient's last menstrual period, or "LMP."

[2] Alan Wilson, South Carolina Attorney General, *Attorney General Wilson's Statement on Heartbeat Bill Becoming Law*, http://www.scag.gov/archives/42039 (last viewed Mar. 4, 2021).

[3] Mike Olson, *Attorney General Alan Wilson Reacts to the Suspension of SC's Recent Abortion Ban*, ABC Columbia (Feb. 19 2021), https://www.abccolumbia.com/2021/02/19/attorney-general-alan-wilson-reacts-to-the-suspension-of-scs-recent-abortion-ban/.

Governor McMaster and Speaker Lucas moved to intervene on February 22 and 23, 2021, respectively.

## LEGAL STANDARD

A movant seeking intervention as of right under Rule 24(a)(2) must show that: (1) the motion to intervene is timely; (2) the movant has an interest in the subject matter of the action; (3) the denial of the motion to intervene would impair or impede the movant's ability to protect its interest; and (4) the movant's interest is not adequately represented by the existing parties to the litigation. *Hous. Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999); *Middleton v. Andino*, 481 F. Supp. 3d 563, 567 (D.S.C. 2020). "Failure to satisfy even one" of these "requirements results in the denial of intervention by right." *Id.*

A movant seeking permissive intervention under Rule 24(b)(1)(B) must establish that its motion is timely and that its claims or defenses share a common question of fact or law with the main action. Even if a movant satisfies these requirements, however, the district court enjoys broad discretion in determining whether to grant permissive intervention. *See Stuart v. Huff*, 706 F.3d 345, 349–50, 355 (4th Cir. 2013). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). And the putative intervenor's ability to participate as *amicus curiae* can weigh in favor of the court exercising its discretion to deny permissive intervention. *Stuart*, 706 F.3d at 355.

## ARGUMENT

**I.    Governor McMaster And Speaker Lucas Are Not Entitled To Intervene As A Matter Of Right Under Rule 24(a)(2)**

Governor McMaster and Speaker Lucas fail to satisfy three of the four requirements for intervention as of right under Rule 24(a)(2). Neither putative intervenor can show a direct,

significantly protectable interest in the specific statute challenged in this lawsuit. Any interests that they may have are adequately represented by an existing South Carolina government Defendant. And because the putative intervenors have *no* protectable interests in the Act, they necessarily cannot show that denial of intervention would impair their ability to protect those interests, particularly where they remain free to submit their views to the Court as *amici curiae*.

A.    **Governor McMaster And Speaker Lucas Lack A Direct, Significantly Protectable Interest In SB 1**

To warrant intervention as of right, a putative intervenor must have a "significantly protectable interest" in the action, and that interest "must be direct, rather than remote or contingent." *Thomas v. Andino*, 335 F.R.D. 364, 370 (D.S.C. 2020) (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971), and *S.C. Coastal Conservation League v. Pruitt*, No. 18-CV-330-DCN, 2018 WL 2184395, at *8 (D.S.C. May 11, 2018)). An interest is "significantly protectable" where the intervenor stands "to gain or lose by the direct legal operation of the district court's judgment." *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991).

Here, Governor McMaster claims that he should be permitted to intervene to vindicate his "constitutional duty to 'take care that the laws be faithfully executed.'" Governor McMaster's Mot. to Intervene. at 7, ECF No. 32 (hereinafter "Gov.'s Mot.") (citing S.C. Const. art. IV, § 15). Similarly, Speaker Lucas argues that he has a "significant interest" in this litigation because the South Carolina Constitution "vests plenary power in the General Assembly to provide for the health, safety, and welfare of South Carolinians," and because "establishing [abortion restrictions] on behalf of the State is within the exclusive constitutional purview of the Legislature." Speaker Lucas's Mot. to Intervene at 2–3, ECF No. 34 (hereinafter "Speaker's Mot.") (citing S.C. Const. art. XII, § 1). Neither of these generalized interests—which boil down to assertions that the putative intervenors participate in lawmaking—is sufficiently "direct" or "significantly

4

protectable" to justify intervention.

As an initial matter, this Court has already rejected this very argument from Speaker Lucas multiple times—holdings the Speaker ignores in his motion to intervene. In *Middleton v. Andino*, Speaker Lucas sought to intervene in a constitutional challenge to South Carolina's absentee voting laws, asserting that "the legislative branch of South Carolina government . . . is endowed with the responsibility of enacting the laws of the state." 481 F. Supp. 3d at 569. This Court concluded that "[i]n essence, the Proposed Intervenors seek intervention by right due to their status as legislators within South Carolina's General Assembly," and held that "such status alone does not meet the requirements to intervene as a matter of right." *Id.* (citation omitted); *see also Thomas v. Andino*, No. 3:20-cv-01552-JMC, 2020 WL 4934305, at *5 (D.S.C. Aug. 24, 2020) (same). In support of this holding, the Court cited *South Carolina Electric & Gas Company v. Whitfield*, No. 3:18-CV-01795-JMC, 2018 WL 3470660, at *3 (D.S.C. July 18, 2018), yet another decision holding that Speaker Lucas's generalized interest in defending the constitutionality of a challenged state statute did not justify intervention as of right.

District courts routinely reject this kind of generalized grievance as a basis for intervention as of right. As this Court observed in *South Carolina Electric*, "[i]f a legislator's personal support for a piece of challenged legislation gave rise to an interest sufficient to support intervention as a matter of right, then legislators would have the right to participate in every case involving a constitutional challenge to a state statute." 2018 WL 3470660, at *3 (quoting *One Wis. Inst., Inc. v. Nichol*, 310 F.R.D. 394, 397 (W.D. Wis. 2015)); *see also id.* at *3 n.8 (collecting district court cases holding that legislators' participation in lawmaking does not justify intervention as of right). Rule 24(a) does not permit this degree of legislative intrusion on judicial proceedings nor should it. While Speaker Lucas may wish to show his support for certain South Carolina laws by

5

defending them in litigation, the appropriate outlet for his advocacy is the House floor, not the courtroom as a party defendant.

Similarly, Governor McMaster's general constitutional duty to "take care that the laws be faithfully executed" does not give him a particularized, direct interest in the specific law challenged in this case. *See Diamond v. Charles*, 476 U.S. 54, 75–76 (1986) (O'Connor, J., concurring) (noting that a proposed intervenor's "desire that the Illinois Abortion Law as written be obeyed" is not a significantly protectable interest); *cf. Bradacs v. Haley*, 58 F. Supp. 3d 499, 511–12 (D.S.C. 2014) (holding that the Governor's duty to "take care that the laws be faithfully executed" is too general to "establish a 'special relation' to the challenged provisions," as needed to qualify for the *Ex Parte Young* exception to sovereign immunity); *Condon v. Haley*, 21 F. Supp. 3d 572, 579 (D.S.C. 2014) (same). And the Governor's citation to precedent recognizing legislators' interest in defending a statute's constitutionality where the executive branch has declined to defend, Gov.'s Mot. at 7,[4] has no bearing on whether the Governor has a unique, protectable interest in defending state law separate from others in the executive branch— specifically, the state Attorney General, who has vowed to defend SB 1 vigorously all the way to the U.S. Supreme Court.

Governor McMaster attempts to show a significantly protectable interest in this litigation by asserting that it threatens "his ability to fully consider and decide whether to sign proposed bills" because the lawsuit was filed after SB 1's passage by the General Assembly but before the Governor signed SB 1 into law. Gov.'s Mot. at 8. This argument is baseless. Nothing about this lawsuit would, or did, limit the Governor's ability to "consider and decide whether to sign" SB 1. Indeed, Governor McMaster exercised his constitutional power to sign this abortion ban into law

---

[4] Citing *S.C. Electric*, 2018 WL 3470660, at *4 (quoting *Fisher-Borne v. Smith*, 14 F. Supp. 3d 699, 703 (M.D.N.C. 2014)).

three hours after it was passed by the General Assembly, with great fanfare in a previously announced ceremony broadcast live, before a crowd of cheering, singing supporters.[5] Meanwhile, aware of the imminent harm to their patients from this reckless statute, Plaintiffs sought judicial relief from enforcement of the *enacted* law, which by definition would have already received the Governor's approval. *See* Compl. at ¶ 68, ECF No. 1. Plaintiffs did not request relief as to Governor McMaster, and any injunctive relief could not possibly apply to him. Put simply, he has nothing "to gain or lose by the direct legal operation of the district court's judgment." *Teague*, 931 F.2d at 261.

In sum, Speaker Lucas's and Governor McMaster's participation in SB 1's enactment does not give them an interest sufficient to support intervention as a matter of right.

### B.    Attorney General Wilson Adequately Represents Any Interest That Governor McMaster And Speaker Lucas May Have In This Litigation

In addition, Governor McMaster and Speaker Lucas have not met their burden of establishing inadequate representation by existing Defendants as required by Rule 24(a)(2). Although demonstrating inadequate representation is generally a "minimal" burden, *Teague*, 931 F.2d at 262 (citation omitted), there is a presumption of adequate representation when an existing party has the same "ultimate objective" as a proposed intervenor, *Commonwealth of Virginia v. Westinghouse Elec. Corp*, 542 F.2d 214, 216 (4th Cir. 1976), and a *strong* presumption of adequate representation when existing defendants are represented by a government agency, *Stuart*, 706 F.3d at 352. These presumptions of adequate representation can only be rebutted by a "strong showing" of adversity of interest, collusion, or nonfeasance by the existing defendants. *Id*. Governor

---

[5] Jeffrey Collins, *SC Governor Signs Abortion Ban; Planned Parenthood Sues*, Associated Press (Feb. 18, 2021), https://apnews.com/article/sc-governor-signs-abortion-ban-2cd 9e039d63fb071427db688d7ef8f05. Any interest the Governor may have had in protecting his ability to "consider and decide whether to sign" SB 1 evaporated upon this signing.

McMaster and Speaker Lucas utterly fail to articulate why existing South Carolina government Defendant Attorney General Wilson does not adequately represent their interests in defending the constitutionality of South Carolina laws.

      1.    *Attorney General Wilson has the same ultimate objective as the putative intervenors.*

South Carolina Attorney General Alan Wilson is the lead named Defendant in this lawsuit. As Attorney General, he is charged with defending South Carolina's laws and safeguarding any legitimate interests that the Governor and Speaker Lucas seek to protect through their motions to intervene. South Carolina law provides that the Attorney General "shall appear for the State in the Supreme Court and the court of appeals in the trial and argument of all causes, criminal and civil, in which the State is a party or interested, and in these causes in any other court or tribunal when required by the Governor or either branch of the General Assembly." S.C. Code Ann. § 1-7-40. It is, therefore, Attorney General Wilson's responsibility to enforce and defend the statutes that Plaintiffs challenge in this lawsuit as unconstitutional.

By every indication, Attorney General Wilson intends to defend the constitutionality of SB 1 zealously. The Attorney General's office has filed opposition briefs in defense of SB 1, submitted expert witness testimony in support of that opposition, and appeared before the Court to argue his cause at the February 19, 2021 hearing on Plaintiffs' request for a TRO. Throughout this briefing and argument, the Attorney General has repeatedly denied Plaintiffs' claim that SB 1 violates the U.S. Constitution and urged the Court to permit him and the other Defendants to enforce it. *See, e.g.*, Return of Att'y Gen. & Solicitors Wilson & Wilkins in Opp'n to Mot. for TRO & Prelim. Inj. at 1, 3, 4, ECF No. 19; Supp. Return of Att'y Gen. & Solicitor Wilkins in Opp'n to Mot. for Prelim. Inj. & Req. that TRO Be Dissolved at 1, 11, 13–14, 18, ECF No. 44.

2. *Governor McMaster and Speaker Lucas make no showing of inadequate representation.*

Governor McMaster and Speaker Lucas fail to provide any basis to conclude that their interests will not be adequately represented by Attorney General Wilson, much less the strong showing of adversity of interest, collusion, or nonfeasance required to rebut the presumption of adequate representation by existing South Carolina government Defendants.[6] Though Governor McMaster and Speaker Lucas claim that the existing Defendants cannot adequately represent their interests, these arguments are nothing but assertions that the Governor and Speaker Lucas have different governmental roles than the existing Defendants, and thus that those Defendants cannot possibly represent their interests adequately. *See* Gov.'s Mot. at 9 ("Defendants do not have the same constitutional authority and duties as the Governor, they largely do not have the same constituencies as the Governor"); Speaker's Mot. at 3 ("[N]one of the existing parties can adequately represent Speaker Lucas's interests in this litigation because none of them bear the constitutional responsibility for establishing South Carolina law that the General Assembly does. . . . [T]hey are all members of the executive branch of government"). Of course, if the Attorney General were incapable of representing the interests of state officials with different "constitutional authority and duties" than his own, there would be no need for South Carolina to employ an Attorney General at all: each government officer would be responsible for representing his or her particular interests in court in *every case* challenging South Carolina government action, because each has a unique governmental "perspective" to "speak from." Speaker's Mot. at 3.

---

[6] On December 7, 2020, the *en banc* Fourth Circuit heard oral argument in *North Carolina State Conference of NAACP v. Berger*, No. 19-2273, which addresses the presumption of adequate representation by a state government defendant and the nature of a proposed state government intervenor's burden to rebut that presumption. The Fourth Circuit has not yet issued a decision. Here, because Governor McMaster and Speaker Lucas have made *no* showing of adversity of interest, collusion, or nonfeasance, they fail to demonstrate inadequate representation under *any* standard.

In any event, the relevant legal question is not whether the putative intervenors and the existing Defendants are similarly situated as to their governmental roles, but whether they seek the same "ultimate objective." *Westinghouse Elec. Corp.*, 542 F.2d at 216. Here, of course, they do: as in *Stuart v. Huff*, where the Fourth Circuit affirmed the district court's denial of intervention both as of right and permissively in a lawsuit challenging an abortion restriction, "[b]oth the government agency and the would-be intervenors want the statute to be constitutionally sustained." 706 F.3d at 352. Even Speaker Lucas concedes that he may "share common goals" with the existing Defendants. Speaker's Mot. at 3; *see also id*. at 6 (stating that "his intention in the case" is "to defend the constitutionality of the challenged legislation"). Here, some Defendants, including Attorney General Wilson, are "employees of an executive agency and were sued in their official capacity," *Middleton*, 481 F. Supp. 3d at 569 (citation omitted), and they have repeatedly and publicly demonstrated their intent to defend the constitutionality of SB 1 in this Court and on appeal.

Speaker Lucas also points to South Carolina law to support his allegation of inadequate representation, but the statute he relies on is inapposite. Specifically, he argues that in recent appropriations legislation the South Carolina legislature has authorized its leadership "to seek intervention in federal litigation where a state law is challenged, even if the Attorney General has also appeared in the case." Speaker's Mot. at 4 (citing Gen. Appropriations Bill for Fiscal Year 2019–2020, H. 4000, 123rd Sess. (hereinafter "Appropriations Act") § 91.26 (2019); 2020 S.C. Acts 135 § 1(A)(2) (extending the Appropriations Act, including the cited provision)). But the legislature's agreement to fund the Speaker's baseless litigation efforts hardly compels the Court to permit his involvement. The relevant section provides that, for state constitutional challenges in federal court, "the Legislature may seek to intervene, to file an amicus brief, or to present argument

10

in accordance with the federal rules of procedure." Appropriations Act § 91.26. As this Court held in *Middleton*, when Speaker Lucas raised this same Appropriations Act language in an attempt to justify intervention as of right, the statutory phrase "'may seek to intervene' in a federal action, in contrast to the preceding statutory language that creates an explicit right to intervene in *state* proceedings, convinces the court that the South Carolina General Assembly did not intend to create a wholly new right for state legislators to intervene in state constitutional challenges before a federal court." 481 F. Supp. 3d at 570 (emphasis added); *see also Thomas*, 2020 WL 4934305, at *5 (same).

Speaker Lucas ignores this on-point precedent, of which he is no doubt aware, and instead points to *South Carolina Electric*, an earlier, unpublished case suggesting in dicta that state legislation authorizing legislative leaders to defend legislative enactments, such as N.C. Gen. Stat. § 1-72.2, may justify the leaders' intervention as of right. Speaker's Mot. at 4 (citing *S.C. Electric*, 2018 WL 3470660, at *4). But in *Middleton*, this Court rejected that reading of *South Carolina Electric*: the Court expressly held that the Appropriations Act was *distinguishable* from N.C. Gen. Stat. § 1-72.2 and did *not* justify Speaker Lucas's intervention as of right. *Middleton*, 481 F. Supp. 3d at 570 (explaining that, among other things, "[t]he South Carolina law allows legislators to simply 'seek' intervention under the federal rules; the North Carolina law overtly requests the presiding federal court 'to allow both the legislative branch and the executive branch' to intervene" (citation omitted)). The Court should again reject Speaker Lucas's attempt to rely on the Appropriations Act language to justify intervention as of right.

Because the South Carolina Attorney General defending this action shares the Governor's and Speaker's ultimate objective of upholding the challenged South Carolina laws, there is a presumption of adequate representation that the putative intervenors can rebut only with a *strong*

*showing* of "adversity of interest, collusion, or nonfeasance." *Westinghouse Elec. Corp.*, 542 F.2d at 216 (citation omitted); *Stuart*, 706 F.3d at 352. But Governor McMaster and Speaker Lucas have not even asserted, much less made a strong showing of, any of these things regarding the South Carolina Attorney General. *See generally* Gov.'s Mot.; Speaker's Mot. They thus fail to meet the inadequate representation requirement for intervention as of right under Rule 24(a)(2).

### C.     Denial Of The Motions To Intervene Would Not Impair Or Impede Either Movant's Ability To Protect His Interests

Finally, because Governor McMaster and Speaker Lucas have failed to demonstrate that they have a direct, significantly protectable interest sufficient to warrant intervention as of right, *see supra* Section I.A, "it necessarily follows that [they] 'cannot show that this case threatens to impair any such interests.'" *N.C. State Conf. of the NAACP v. Cooper*, 332 F.R.D. 161, 168 (M.D.N.C. 2019) (quoting *One Wis. Inst.*, 310 F.R.D. at 397). And because the state Attorney General is presently defending the challenged legislation and has expressed no intention to do otherwise, any interests the Governor and Speaker do have will be adequately represented, *see supra* Section I.B, such that denial of the motions to intervene will not impair or impede either movant's ability to protect his interests. *Cf. Thomas*, 335 F.R.D. at 370 (finding potential impairment of intervenor's interests where intervenor had shown "how its desire to defend the challenged statutes practically diverges from that of Defendants").

Moreover, Governor McMaster and Speaker Lucas can always seek to present their views for the Court's consideration by requesting leave to submit an *amicus curiae* brief. *See Francis v. Chamber of Com.*, 481 F.2d 192, 194–96 (4th Cir. 1973) (affirming district court's decision to deny a motion to intervene and instead permit the would-be intervenor to file an *amicus* brief). "[T]he impairment prong [of the intervention as of right analysis] is not met if the would-be intervenor could adequately protect its interests in the action by participating as amicus curiae."

*Ohio Valley Env't Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 26 (S.D. W. Va. 2015) (citing *McHenry v. Comm'r of Internal Revenue*, 677 F.3d 214, 227 (4th Cir. 2012)); *see also N.C. State Conf. of the NAACP*, 332 F.R.D. at 168 n.5 (holding that, to the extent denial of intervention "would impose any conceivable practical disadvantage on [proposed intervenors'] ability to protect the purported interests of the General Assembly," that impairment could be "significantly alleviated" by their participation as *amicus curiae* (citation omitted)). Although Plaintiffs might dispute the relevance of any such filings, Plaintiffs do not oppose the putative intervenors' participation as *amici*, the appropriate mechanism for them to share their views with the Court.

Governor McMaster claims that his ability to defend his interests will be impaired unless he is permitted to intervene because he "could not 'make motions or . . . appeal the final judgment in the case.'" Gov.'s Mot. at 9 (quoting *Feller v. Brock*, 802 F.2d 722, 730 (4th Cir. 1986)). But because Governor McMaster would not be constrained by any relief granted in this case, *see supra* Section I.A, he lacks Article III standing and so could not appeal unilaterally or otherwise file motions seeking relief beyond that sought by the existing Defendants *even if he were* permitted to intervene. In *Diamond v. Charles*, 476 U.S. at 54, the U.S. Supreme Court held that an intervenor can only appeal a decision in the absence of the party on whose side intervention was permitted if the intervenor demonstrates Article III standing. *Id*. at 64, 68–69; *see also Shaw v. Hunt*, 154 F.3d 161, 166 (4th Cir. 1998). And in *Town of Chester v. Laroe Estates, Inc*., 137 S. Ct. 1645 (2017), the Supreme Court held that an intervenor as of right must have Article III standing in order to pursue relief that is different from the relief sought by a party with standing. *Id*. at 1651. Under this binding precedent, Governor McMaster *could not* seek relief, through motions or by filing an appeal, other than that already sought by one of the existing Defendants with a direct enforcement interest in the challenged statutes. Nor could Speaker Lucas, were he inclined to do so. *See Va.*

*House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1953 (2019) (holding that one chamber of state legislature lacks standing in its own right to pursue appeal from order invalidating its redistricting plan). Accordingly, denial of intervention will not impair Governor McMaster's or Speaker Lucas's ability to protect their interests in any way. *See Maxum Indem. Co. v. Biddle L. Firm, PA*, 329 F.R.D. 550, 555 (D.S.C. 2019) ("Literally, Rule 24(a)(2) requires a practical impairment of the ability to *protect* an interest and not a practical impairment of the ability to *assert* an interest." (quoting *TPI Corp. v. Merch. Mart of S.C., Inc.*, 61 F.R.D. 684, 688 (D.S.C. 1974)).

Because Governor McMaster and Speaker Lucas have plainly failed to establish three of the four elements required for intervention as of right, intervention on this basis should be denied.

## II.    Permissive Intervention Under Rule 24(b) Is Unwarranted

Governor McMaster's and Speaker Lucas's requests for permissive intervention under Rule 24(b) should also be denied. Under Rule 24(b)(1)(B), "the court *may* permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact" (emphasis added). Permissive intervention under this rule is wholly at the discretion of the district court, given that "Rule 24's requirements are based on dynamics that develop in the trial court and that the court is accordingly in the best position to evaluate." *Stuart*, 706 F.3d at 349–50. In exercising its discretion, the Court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

To advance their requests for permissive intervention, Governor McMaster and Speaker Lucas halfheartedly raise the same unique-government-role arguments they relied on to support intervention as of right. But because Governor McMaster and Speaker Lucas seek to present the exact defenses already advanced by Attorney General Wilson—defenses that they may argue share

"a common question of law or fact" with the main action, Fed. R. Civ. P. 24(b)(1)(B)—they utterly fail to overcome the presumption of adequate representation by existing South Carolina Defendants, justifying denial of permissive intervention, as well.

Other courts have held that where "the proposed interveno[r fails] to overcome the presumption of adequate representation by the government, the case for permissive intervention disappears." *One Wis. Inst.*, 310 F.R.D. at 399 (quoting *Menominee Indian Tribe of Wis. v. Thompson*, 164 F.R.D. 672, 678 (W.D. Wis. 1996)); *see also Tri-State Generation and Transmission Ass'n, Inc. v. N.M. Pub. Regul. Comm'n*, 787 F.3d 1068, 1075 (10th Cir. 2015); *Kneeland v. Nat'l Coll. Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987); *Sweeney v. Rauner*, No. 18-cv-1362, 2018 WL 11275902, at *2 (N.D. Ill. Nov. 8, 2018); *Bay Mills Indian Cmty. v. Snyder*, No. 1:11–cv–729, 2017 WL 7736934, at *3 (W.D. Mich. Mar. 8, 2017). For example, in *One Wisconsin Institute*, two state legislators and other individuals sought to intervene as defendants in a case challenging several voting laws enacted by Wisconsin. 310 F.R.D. at 396. The court denied both intervention as of right and permissive intervention, noting that "the attorney general [was] adequately pursuing the outcome that the proposed intervenors seek," and that "the existing parties [were] capable of identifying and presenting the relevant issues." *Id*. at 399.

Similarly, while the Court did allow Speaker Lucas to intervene permissively in *South Carolina Electric*, *Middleton*, and *Thomas*, in those cases Speaker Lucas's interests were inadequately represented by existing parties. In *South Carolina Electric*, the Court explicitly found inadequate representation by existing defendants, who notably did *not* include the Attorney General. 2018 WL 3470660, at *5–6. And in Speaker Lucas's motions to intervene in *Thomas* and *Middleton*, he directly attributed his desire to intervene to the fact that the Attorney General was "not a party" to those cases. Mot. to Intervene by James H. "Jay" Lucas, Speaker of the S.C. House

of Representatives, *Thomas v. Andino*, No. 3:20-cv-1552-JMC, 2020 WL 6253386 (D.S.C. Aug. 12, 2020); Mot. to Intervene by James H. "Jay" Lucas, Speaker of the S.C. House of Representatives, *Middleton v. Andino*, No. 3:20-cv-1730-JMC, 2020 WL 6577939 (D.S.C. Aug. 12, 2020).[7] Here, as shown above, Governor McMaster and Speaker Lucas have no interest in this litigation that existing state government Defendants, including the Attorney General who has vowed to defend SB 1, fail to represent adequately. Their requests for permissive intervention should therefore be denied.

Indeed, as noted above, allowing Governor McMaster and Speaker Lucas to intervene permissively here would invite state government officials to intervene in *any* lawsuit challenging the legality of a state law, even absent a showing of inadequate representation by existing state government defendants or any particularized connection to the specific legislation being challenged, so long as the state officials clear the low bar of asserting a generalized interest in seeing the law enforced. As the district court cautioned in *One Wisconsin Institute*, "where a group of plaintiffs challenge state legislation, the court should evaluate requests to intervene with special care, lest the case be swamped by extraneous parties who would do little more than reprise the political debate that produced the legislation in the first place." 310 F.R.D. at 397.

---

[7] Speaker Lucas Mot. to Intervene in *Thomas*, 2020 WL 6253386 ("[*B*]*ecause the South Carolina Attorney General, not a party, has filed only an Amicus brief*, Speaker Lucas seeks to join this action. . . . Speaker Lucas and President Peeler are in the best position to provide this Court with insights into the policies and statutes at issue, *especially where, as here, the South Carolina Attorney General is not a party and has filed only an Amicus brief*." (emphasis added)); Speaker Lucas Mot. to Intervene in *Middleton*, 2020 WL 6577939 ("In their roles as the leaders of the House and Senate, respectively, they are in the best position to provide this Court with insights into the policies and statutes at issue, *especially where, as here, the South Carolina Attorney General is not a party and has, with the permission of this Court, filed only an Amicus brief*." (emphasis added)).

While Rule 24(b) should be construed "liberally," *Thomas*, 335 F.R.D. at 369, it has never been stretched this far. As explained above, Speaker Lucas has only been permitted to intervene in cases where the Attorney General was not participating as a party. Moreover, in *Middleton* and *Thomas*, Speaker Lucas possessed a *particular* interest in the challenged law—specifically, he sought to defend the constitutionality of state laws governing the elections process by which he and his fellow legislators won public office. S*ee Middleton*, 481 F. Supp. 3d at 566; *Thomas*, 2020 WL 4934305, at *1–2; *see also Thomas*, 335 F.R.D. at 367–68, 371 (allowing permissive intervention by South Carolina Republican Party in same lawsuit challenging South Carolina election laws "to protect its interest in electing Republicans" (citation omitted)). No such inadequate representation or nexus to the challenged law exists for Governor McMaster or Speaker Lucas here: only a desire to reiterate publicly their support for one of the most extreme abortion bans in the nation.

While Governor McMaster cites Rule 24(b)(2)(A), providing that a court may grant permissive intervention to a state government officer if a party's claim or defense is based on a statute "administered by the officer," neither the Governor nor Speaker Lucas claims to be responsible for "administer[ing]" the abortion restrictions enacted through SB 1. *See generally* Gov.'s Mot. at 10; Speaker's Mot.; *cf. Bradacs*, 58 F. Supp. 3d at 511–12; *Condon*, 21 F. Supp. 3d at 579. And even if they were, the Court would still enjoy discretion to deny permissive intervention, including on grounds of undue delay or prejudice to the original parties' rights. *See* Fed. R. Civ. P. 24(b)(2) (providing that the court "*may* permit" intervention by a state government officer (emphasis added)); Fed. R. Civ. P. 24(b)(3) (requiring the court to consider potential delay or prejudice in exercising its discretion under Rule 24(b)).

17

Finally, intervention would surely cause such undue delay and prejudice here. It would complicate and potentially extend proceedings in what would otherwise be an extremely straightforward case, and one that is eligible for prompt summary resolution as a matter of black-letter law. *See* Compl. at ¶¶ 65–70, ECF No. 1; Memo. in Supp. of Pls.' Mot. for a TRO & Prelim. Inj. at 11–14, ECF. No. 5-1. Speaker Lucas indicates that he intends to create his own "factual record" in support of SB 1. Speaker's Mot. at 6. Governor McMaster has filed a lengthy motion to dissolve the February 19 TRO and memorandum in support without waiting for the Court to rule on his motion to intervene, threatening to conduct discovery "at minimum." Mot. to Dissolve TRO, ECF No. 48; Mem. in Supp. of Mot. to Dissolve TRO & Opp'n to Pls.' Mot for Prelim. Inj., ECF No. 48-1 at 26 n.5.

Even assuming the Governor and Speaker Lucas were able to intervene at this stage without causing a delay in the preliminary injunction briefing schedule, their interventions would still prejudice Plaintiffs. Governor McMaster and Speaker Lucas moved separately, so if the Court permitted them to intervene, Plaintiffs would need to respond to *three* sets of full briefing by parties on any given issue, and the Court would need to review *four*. This prejudice would not be mitigated by extended deadlines or enlarged page limits for Plaintiffs' written submissions, because the extended timeline itself would directly prejudice Plaintiffs, who seek urgent relief from a blatantly unconstitutional law that would virtually eliminate abortion access throughout the state of South Carolina. *Cf. Alt v. U.S. Env't Prot. Agency*, 758 F.3d 588, 591 (4th Cir. 2014) (affirming district court's conclusion that delay and "extra effort" required by intervention would prejudice plaintiffs (citation omitted)).

Moreover, intervention would contribute nothing to the litigation to justify that prejudice. As discussed above, both Governor McMaster and Speaker Lucas indicate that they would defend

the constitutionality of SB 1 and oppose Plaintiffs' requests for preliminary or permanent injunctive relief. Gov.'s Mot. at 7, 10; Speaker's Mot. at 6. As existing Defendant Attorney General Wilson takes the exact same position, two additional sets of briefing and extended oral argument on the issue would simply consume judicial resources without aiding in the Court's resolution of the case, justifying denial of permissive intervention. *See Stuart*, 706 F.3d at 355 (affirming denial of permissive intervention where it "would likely 'result in undue delay in adjudication of the merits, without a corresponding benefit to existing litigants, the courts, or the process' because 'the existing [d]efendants are zealously pursuing the same ultimate objectives'" (citation omitted) (alteration in original)).

Denying intervention and instead permitting participation as *amici* where appropriate would allow Governor McMaster and Speaker Lucas to share their views on SB 1 without opening a Pandora's box of duplicative briefing and multipronged oral argument. Indeed, in *Stuart*, the Fourth Circuit recognized that the opportunity for a would-be intervenor to submit an *amicus curiae* brief "reinforces our disinclination to drive district courts into multi-cornered lawsuits by indiscriminately granting would-be intervenors party status," and it affirmed the district court's denial of intervention, both as of right and permissive, in a lawsuit regarding an abortion-related statute. 706 F.3d at 355. This Court should do the same.[8]

## CONCLUSION

For the reasons set forth above, the Court should deny the motions to intervene of Governor McMaster and Speaker Lucas, both permissively and as of right.

---

[8] In the event that Governor McMaster and Speaker Lucas are permitted to intervene, Plaintiffs respectfully submit that, to conserve judicial resources and to minimize prejudice to Plaintiffs, the Court should require the Governor and Speaker either to join in the briefs of existing Defendants or to split the applicable page limits among the various sets of defendants. *See* D.S.C. Civ. R. 7.05(B).

Respectfully submitted,

/s/ *M. Malissa Burnette*
M. Malissa Burnette (Fed. Bar No. 1616)
Kathleen McDaniel (Fed. Bar No. 10139)
Grant Burnette LeFever (Fed. Bar No. 12943)
Burnette Shutt & McDaniel, PA
P.O. Box 1929
Columbia, SC 29202
(803) 904-7913
mburnette@burnetteshutt.law
kmcdaniel@burnetteshutt.law
glefever@burnetteshutt.law

*Attorneys for Plaintiffs*

Julie A. Murray*
Hannah Swanson*
Planned Parenthood Federation of America
1110 Vermont Avenue, NW, Suite 300
Washington, DC 20005
(202) 803-4045
julie.murray@ppfa.org
hannah.swanson@ppfa.org

*Attorneys for Plaintiff Planned Parenthood South Atlantic*

Alexandra S. Thompson*
Michelle Moriarty*
Jennifer Beard*
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10038
(917) 637-3639
athompson@reprorights.org
mmoriarty@reprorights.org
jbeard@reprorights.org

*Attorneys for Plaintiffs Greenville Women's Center and Dr. Terry L. Buffkin*

Dated: March 5, 2021

*\* Admitted pro hac vice / or to be filed*

20